UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Daniel Bentley,

    Plaintiff,

v.                                                                 Case No. 09-13389

Metropolitan Baking Company, *et al.*,          Honorable Sean F. Cox

    Defendants.
_____/

## **OPINION & ORDER**

Plaintiff filed this hybrid suit under § 301 of the Labor Management Relations Act, asserting that: 1) his employer demoted him and harassed him in violation of an applicable collective bargaining agreement; and 2) his union failed to fairly represent him when it declined to pursue arbitration of his grievances. Plaintiff also asserts a tort claim against his supervisor, Defendant Sam Militello. The matter is currently before the Court on: 1) the Union's Motion for Summary Judgment, brought pursuant to FED. R. CIV. P. 56(c) (Docket Entry No. 31); and 2) a Motion by the remaining two defendants, brought pursuant to FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 56(c). (Docket Entry No. 30). The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motions will be decided upon the briefs.

For the reasons set forth below, the Court shall grant summary judgment in favor of the Union on Plaintiff's duty of fair representation claim. Given that ruling, Plaintiff's § 301 hybrid

1

suit fails as a matter of law and the Company is also be entitled to summary judgment. In addition, the Court shall dismiss Plaintiff's tortious interference claim against Defendant Militello because it is preempted under § 301 of the Labor Management Relations Act.

BACKGROUND

A.   Procedural Background:

On August 26, 2009, Plaintiff Daniel Bentley ("Plaintiff" or "Bentley") filed this action against Defendants Metropolitan Baking Co. ("MBC"), Sam Militello ("Militello"), and Baker's Local No. 326[1] ("the Union").  Plaintiff's complaint asserts the following three counts: "Tortious Interference with Business Relationships and Expectancies Against Sam Militello" (Count I); "Failure to Represent Against Defendant Baker's Local No. 326, Pursuant to Section 301 of the LMRA" (Count II); and "Violation of the Collective Bargaining Agreement Against Defendant Metropolitan Baking Company Pursuant to Section 301 of the LMRA" (Count III).

Following the close of discovery, Defendants filed dispositive motions.

1.   The Union's Motion For Summary Judgment:

On May 5, 2010, the Union filed its Motion for Summary Judgment, brought pursuant to FED. R. CIV. P. 56(c) (Docket Entry No. 31).  In compliance with this Court's written practice guidelines for Motions for Summary Judgment (*see* Scheduling Order, Docket Entry No. 19, at 1-3), the Union filed its Statement of Material Facts Not in Dispute (Docket Entry No. 31, Ex. C), along with several exhibits.

In responding to the Union's Motion for Summary Judgment, brought pursuant to FED. R.

---

[1]Plaintiff's complaint names the Union as "Baker's Local No. 326."  In its Answer, and in its Motion for Summary Judgment, the Union identifies itself as "Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Bakers Local No. 326-AFL-CIO-CLC."

Civ. P. 56(c), Plaintiff's Counsel treated the motion as if it were a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). In addition, Plaintiff failed to file any response to the Union's Statement of Material Facts Not in Dispute, even after being given notice of this failure by this Court's chambers, and after the Union highlighted and stressed that failure in its Reply Brief. Moreover, the only exhibit attached to Plaintiff's response is a document titled "Affidavit of Daniel Bentley."

Despite its title, the document is not an "affidavit." "An 'affidavit' is a voluntary written statement of fact under oath sworn to or affirmed by the person making it before some person who has authority under the law to administer oaths and officially certified to by the officer under his seal or office." 3 Am.Jur.2d *Affidavits* § 1. "A complete affidavit must satisfy three essential elements, one of which is "a written oath embodying the facts as sworn to by the affiant." 3 Am.Jur.2d *Affidavits* § 8. "An unsworn affidavit cannot be used to support or oppose a motion for summary judgment." *Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998).

The document submitted by Plaintiff is not a written statement of fact, but rather, is a single-spaced, seven-page narrative that Plaintiff appears to have drafted himself, after reading Defendant MBC and Militello's motion. The document consists of numerous conclusions and opinions. More importantly, the document does not contain a written oath embodying the facts as sworn to by the affiant. Nor does it meet the requirements for an unsworn declaration made under 28 U.S.C. 1746 (*i.e.*, a signed and dated statement subscribed as true under the penalty of perjury).[2] Accordingly, the unsworn document submitted by Plaintiff will not be considered by

---

[2]In addition, Plaintiff's response brief opposing the Union's Motion does not refer the Court to any specific portion of this seven-page document.

the Court.

2. Defendant MBC And Militello's Motion:

On May 3, 2010, Defendants MBC and Militello filed a motion, pursuant to FED. R. CIV. P. 56(c) and FED. R. CIV. P. 12(b)(6) (Docket Entry No. 30).

In response to this motion, Plaintiff submitted the same unsworn affidavit that he submitted in response to the Union's Motion. Again, for the reasons above, the Court will not consider the unsworn affidavit for purposes of the pending motions.

B. Factual Background:

The following material facts are gleaned from Plaintiff's complaint and the evidence submitted by the parties.

Plaintiff was hired by MBC on or about June 24, 2004. (Compl. at ¶ 15; Craine Decl. at ¶ 5). At all relevant times, Plaintiff was a member of the Union and was participant in the collective bargaining agreement entered into between MBC and the Union ("the CBA"). (Compl. at ¶¶ 14 & 16). The CBA governs the terms and conditions of employment of all employees working for MBC, including Plaintiff. (*Id.*).

The CBA is attached to Plaintiff's Complaint as Exhibit E. The CBA contains a multi-step grievance procedure. (*Id*. at 15). Under Step 3 of the procedure, the Chief Steward shall "arrange a meeting with the Plant Manager or his or her designated representative, the Chief Steward, the Departmental Steward, the Aggrieved person or persons and a representative of the Union." (*Id.*). If that dispute remains unsettled after Step 3, the grievance may be taken up to arbitration. (*Id.*).

By all accounts, Plaintiff has had a poor relationship with Militello, MBC's Production

Manager at its Hamtramck, Michigan facility. As of March 13, 2009, Plaintiff was employed as a Wrapping Department Leader. Following an incident with Militello that day, however, Plaintiff was removed of that leadership classification and was re-classified as a machine operator. (Craine Decl.³ at ¶ 5-7; Ex. A to Compl.).

Nikee R. Craine ("Craine") is the President of Baker's Local 326, which represents employees of MBC. (Craine Decl. at 2). As President, Craine is involved in all aspects of CBA negotiation and enforcement, including representing members in the grievance procedure. (*Id*.). Craine also chairs the Executive Board. The Executive Board oversees the operation of the Union. One of the Board's duties is to decide whether grievances will be submitted to final and binding arbitration under the CBA. "Because the Union's financial resources are limited, and because arbitration is expensive, the Executive Board must select among grievances those which are important enough or which have enough merit to arbitrate. Before a final decision is reached on arbitrating a grievance, members are given an opportunity to meet with the Executive Board to discuss their grievance." (Craine Decl. at ¶ 3).

Following the disciplinary action taken on March 13, 2009, Plaintiff contacted Craine to file a grievance. The Union filed a grievance on behalf of Plaintiff on March 16, 2009. Plaintiff's March 16, 2009 Grievance is attached to the Complaint as Exhibit B. The nature of the grievance was "Unjust removal of leadership position" and the settlement desired was "to be made whole in all lost wages and benefits." (*Id*.).

Craine presented the March 16, 2009 Grievance to George Kordas and Mike Zrimec in a

---

³Craine's Declaration, wherein she declares under penalty of perjury that the foregoing is true and correct, and sets forth its execution date, satisfies 28 U.S.C. § 1746.

5

meeting at MBC. (Craine Decl. at ¶ 7). She met with Plaintiff prior to the meeting, so that they could "discuss his side regarding the reprimand and the demotion." (*Id*.). Plaintiff then attended the meeting with Craine. At the meeting, they discussed the incident and the disciplinary notice. (*Id.*). MBC offered to accommodate Plaintiff's vacation request, which was the subject of Plaintiff's underlying argument with Militello, but Plaintiff refused the offer. (*Id.*). Plant Manager Mike Zrimec denied the grievance. (*Id.*).

On May 11, 2009, Craine received a telephone call from Plaintiff regarding two new incidents that he claimed had occurred between himself and Militello. (Craine Decl. at ¶ 8). Plaintiff claims that Militello had followed him up and down the line, yelling at him. (*Id.; see also* Pl.'s Compl. at ¶ 21). Plaintiff also claimed that Militello had bumped into him intentionally as they passed each other in a hallway. (Craine Decl. at ¶ 8; Pl.'s Compl. at ¶ 21). Thereafter, the Union filed a Grievance on behalf of Plaintiff. The May 11, 2009 Grievance is attached to the Complaint as Exhibit C. Plaintiff described the nature of the grievance as:

> Harassment
> Sam Militello refuses to communicate with me and give me information I need to do my job but when a mistake is made because of his incompetence he doesn't have a problem berat [sic] me with lies and accusations. This is an ongoing problem. Sam Militello is in violation of the [MBC] Harassment Policy.

(*Id.*). The settlement Plaintiff desired was "Inforce [sic] your policy, like you would with any other employee." (*Id.*).

On May 11, 2009, Craine sent a letter requesting that the Union be provided with "any and all camera tapes that show the production floor area where Dan Bentley could have or would have been in the presence of Sam Millitello from the dates of Wednesday May 6, 2009 up to and including May 11, 2009." (Ex. A-4 to the Union's Br.). The letter explained that the Union had

6

filed a grievance on behalf of Plaintiff and that the Union was requesting that the tapes be available for viewing on May 13, 2009. (*Id*.).

On May 13, 2009, a step 3 grievance meeting on Plaintiff's March 16, 2009 Grievance and his May 11, 2009 Grievance was held at MBC. (Craine Decl. at ¶ 9; Pl.'s Compl. at ¶ 20). Craine attended that meeting, along with Gary Bist, Local 326 Secretary-Treasurer, and Plaintiff. MBC owners Jim and George Kordas, and General Manager Mike Zrimec, attended on behalf of MBC. (Craine Decl. at ¶ 9). The surveillance video was reviewed, and there were discussions regarding Plaintiff's grievances and the hostile relationship between Plaintiff and Militello. (*Id*.; Compl. at ¶ 20). Plaintiff alleges that the videotape showed Militello harassing him. (Compl. at ¶ 21). Craine states in her Declaration that, after reviewing the videotape, she could not tell whether Militello made contact with Plaintiff. (*Id*.). No resolution was reached at the March 16, 2009 step 3 grievance meeting. The company and Union decided, however, that another meeting, with both Plaintiff and Militello present, should be scheduled to see if the issues could be resolved. (*Id*.).

Plaintiff told Craine, however, that he would not attend such a meeting unless his attorney was present. (Craine Decl. at ¶ 10). He also told her that he did not want the leader position. (*Id.*). On July 27, 2009, Craine sent Plaintiff a letter on behalf of the Union that stated:

> After my visit today wherein you had refused to speak to me or be a participant in any further meetings regarding your grievance I am informing you of the right to appear before the Executive Board at the next meeting dated August 25, 2009.
>
> To must do so [sic] in writing and can be faxed or sent via mail. This must be done at least five (5) days before the August 25th, 2009 meeting so that we can schedule a time for you to appear.
>
> If we do not hear from you by that date the Executive Board will look at the facts

7

surrounding your grievance and make a decision without your input and you will be notified thereafter of their decision or will assume that you do not wish to pursue this grievance numbered 1832.

Our office and fax numbers are listed above if you should have any further questions please notify this office during regular business hours.

(Ex. A-7 to the Union's Br.).

The meeting minutes of the Union's August 25, 2009 Executive Board Meeting are attached to the Union's Brief as Exhibit A-8). The meeting minutes contain discussion of various grievances and state, in pertinent part, as follows:

| | |
|---|---|
| Metropolitan | Dan Bently – grievance #1832 was discussed and Motion made by Bill Hess and seconded by Evege James not to |
| Metro. Cont. | arbitrate line leader position. He was treated fairly when settlement of $416.00 was received on his previous grievance as opposed to an arbitration. All in favor, motion carried. All agree that he doesn't want line leader position but just the pay, and he continues to refuse a meeting to settle his grievances. |

(Ex. A-8 to the Union's Br.).

Plaintiff filed this action on August 26, 2009.

On August 31, 2009, the Union sent Plaintiff a letter advising Plaintiff that the Executive Board had determined not to pursue Plaintiff's grievance to arbitration due to lack of merit. (Ex. A-9 to the Union's Motion).

## ANALYSIS

I.    <u>Plaintiff's Hybrid § 301 Action (Counts II & III):</u>

Where, as here, a plaintiff jointly sues his employer and his union under § 301 of the Labor Management Relations Act ("LMRA), the action is referred to a hybrid § 301 suit.

*Gilreath v. Clemens & Company*, 212 Fed.Appx. 451, 459 (6th Cir. 2007). The law regarding a hybrid § 301 action is well settled. A hybrid § 301 action involves two constituent claims: 1) a breach of a collective bargaining agreement by the employer and 2) a breach of the duty of fair representation by the union. *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003). The two claims are "inextricably interdependent" because unless a plaintiff "demonstrates both violations, he cannot succeed against either party." *Id.*

This means that if the Court grants summary judgment in favor of the Union as to the fair representation claim, MBC will also be entitled to summary judgment. *Id.; see also Gilreath*, 212 Fed.Appx. at 460 (affirming district court's ruling that "that because Plaintiff failed to establish breach of Defendant Union's duty of fair representation, his breach of contract claim against Defendant company must also fail."); *Wallace v. Industrial Powder Coatings, Inc.*, 107 Fed.Appx. 547, 551 (6th Cir. 2004) (where plaintiff failed to raise a triable question as to whether the Union violated its duty of fair representation, employer was also entitled to summary judgment). Thus, the Court will analyze the Union's Motion for Summary Judgment first.

  A. <u>The Union's Motion For Summary Judgment:</u>

Although Plaintiff's complaint contains numerous allegations complaining about MBC, Militello, and the Union, from 2004 forward, the Union asserts, and Plaintiff does not dispute, that there are only two incidents that fall within the six-month statute of limitations applicable to fair representation claims. (*See* Union's Br. at 7; Pl.'s Compl. at 131). Thus, Plaintiff's fair representation claim is based on Plaintiff's assertion that the Union breached its duty of fair representation by failing "to follow through on Plaintiff's grievances filed on March 16, 2009 (Ex. A) and May 11, 2009 (Ex. B) pertaining to his wrongful demotion and harassment received

9

from Defendant Militello, respectively." (Pl.'s Compl. at ¶ 131).

"In order to prove a breach of the duty of fair representation, an employee must demonstrate that the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith." *Garrison*, 334 F.3d at 538 (citing *Vaca v. Snipes*, 386 U.S. 171, 190 (1967)).

With regard to the arbitrary prong, a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Garrison*, 334 F.3d at 538. Mere negligence on the part of a union does not satisfy this requirement and "ordinary mistakes, errors, or flaws in judgment" do not suffice. *Id.* "In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were 'wholly irrational.'" *Id.* (citing *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). The "wholly irrational" standard is described in terms of "extreme arbitrariness." *Garrison*, 334 F.3d at 539. Thus, union action that may be rationally explained does not violate a duty of fair representation. *Jones v. U.S. Postal Service*, 462 F.Supp.2d 800, 809 (E.D. Mich. 2006).

In response to the Union's Motion for Summary Judgment, Plaintiff asserts that the Union's actions in declining to pursue arbitration of his grievances were arbitrary. Plaintiff's position appears to have two components.

First, Plaintiff asserts that the Union acted arbitrarily by not allowing him to have his attorney present with him at an additional meeting the Union sought to hold after the unsuccessful stage 3 grievance meeting on May 13, 2009. Plaintiff asserts that the Union has not "cited any ordinance in their bylaws or governing statutes precluded attorney presence." (Pl.'s

Resp. Br. at 5).

Plaintiff's position as to this issue is without merit. The Sixth Circuit has held that, absent a provision in the collective bargaining agreement stating to the contrary, an employee does not have the right to be represented by someone other than the union representative in either a grievance proceeding or arbitration. *See e.g., Malone v. United States Postal Service*, 526 F.2d 1099, 1106-07 (6th Cir. 1975); *Cahill v. Big Bear Stores Co.*, 1986 WL 17467 at * 4 (6th Cir. 1986). Plaintiff has not pointed to any part of the CBA that would give him a right to bring his own attorney to a grievance meeting. In fact, the grievance procedure provision in the CBA at issue here, like the one at issue in *Malone*, provides only that the aggrieved person may appear with a representative of the Union:

> Step 3: If a satisfactory result has not been concluded, after the procedure followed in Step 2, the Chief Steward, shall then arrange a meeting with the Plant Manager, or his or designated representative, the Chief Steward the Departmental Steward, the Aggrieved person, or persons and *a representative of the Union.*

(CBA, attached Ex. E to Compl., at 15) (emphasis added).

Second, Plaintiff asserts that the Union acted arbitrarily simply by not taking his grievances to arbitration. Plaintiff's brief appears to take the position that the Union breaches the CBA if it declines to take any grievance to arbitration. (*See* Pl.'s Br. at 8). Plaintiff also appears to contend that the Union acted arbitrarily in declining to pursue arbitration here based on Plaintiff's refusal to appear without counsel. (*Id*. at 5).

Both positions are without merit. "[I]t is well established that a union is not obligated to take all member grievances to arbitration." *Lombard v. UAW International Union*, 2008 WL 344540 (E.D. Mich. 2008) (citing *Vaca v. Snipes*, 386 U.S. 171, 191 (1967)). "'A union is

expected to exercise discretion in deciding whether to process a grievance' and the duty of fair representation 'does not require that a union fully pursue every grievance filed.' 48 AM.JUR.2D *Labor and Labor Relations* § 1085; *Driver v. United States Postal Service, Inc*. 328 F.3d 863, 869 (6th Cir. 2003)." *Lombard, supra*.

Thus, the only remaining issue is whether a reasonable jury could conclude that the Union acted in a "wholly irrational" manner in deciding not to pursue arbitration of Plaintiff's grievance. The evidence submitted by the Union establishes that the Union declined to pursue arbitration because: 1) Plaintiff had indicated that he would not meet further with the Union unless his attorney could be present; 2) the Union found the grievance lacked merit because it concluded that Plaintiff had been treated fairly when a settlement of $416.00 had been received and Plaintiff had indicated that he no longer wanted the line leader position. (Craine Decl.; Ex. A-7 to the Union's Br.; Ex. A-8 to the Union's Br.). The Court concludes that the Union's decision not to pursue arbitration is rationally explained and does not constitute a violation of the duty of fair representation. That is, Plaintiff has not met his substantial burden of showing that the Union's decision was "wholly irrational."

The Court shall therefore grant summary judgment in favor of the Union. That means that Plaintiff's § 301 claim against MBC fails as a matter of law.

II.     Plaintiff's Tortious Interference Claim Against Militello (Count I):

Count I asserts a tortious interference claim against Militello, Plaintiff's supervisor at MBC. Militello seeks dismissal of this count on two grounds. First, he asserts that the claim is preempted by the LMRA. Second, Militello asserts that, as an agent of MBC, he may not be sued for tortiously interfering with Plaintiff's employment relationship with MBC under

12

Michigan law.

> A. <u>Is Plaintiff's Tort Claim Against Militello Preempted By The LMRA?</u>

The Sixth Circuit has "developed a two-step approach for determining whether section 301 preemption applies. First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994).[4] "Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no presumption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted." *Id.*

In order to determine whether Plaintiff's tortious interference claim invokes contract interpretation, the Court should look to the elements of this tort under Michigan Law. *Id*. "To establish a prima facie case of tortious interference with a business relationship, a plaintiff must show (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional or improper interference with the relationship that induces or causes a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *DXS, Inc. v. Siemens Medical Sys., Inc.*, 100 F.3d 462, 469 (6th Cir. 1996) (citing *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.,* 175 Mich.App. 723

---

[4]Plaintiff's reliance on *Doherty v. Parsec*, 872 F.2d 766 (6th Cir. 1989) is misplaced because it was decided *before* the Sixth Circuit's published opinion in *DeCoe* wherein it established the current two-prong test set for determining whether section 301 preemption applies.

(1989)).

Here, Plaintiff claims that he had an "employment relationship with MBC." (Compl. at ¶ 114). Plaintiff claims that, by virtue of numerous alleged actions taken by Militello during Plaintiff's employment at MBC, Militello tortiously interfered with his employment relationship with MBC. To establish a prima facie case, Plaintiff must show that Militello's interference induced or caused a breach or termination of Plaintiff's employment relationship with MBC. It is undisputed that Plaintiff is still employed by MBC. Thus, Plaintiff would have to establish that Militello's conduct induced or caused a breach of his employment relationship with MBC.

Plaintiff acknowledges that the CBA "govern[s] the terms and conditions of employment of all employees working for Defendant MBC, including Plaintiff." (Compl. at ¶ 16). Thus, the issue of whether MBC breached its employment relationship with Plaintiff invokes contract interpretation of the CBA. The Court therefore concludes that Count I is preempted and shall dismiss this claim.[5]

### CONCLUSION & ORDER

For the reasons above, IT IS ORDERED the Union's Motion for Summary Judgment is GRANTED and Plaintiff's hybrid § 301 suit (Counts II and III of Plaintiff's Complaint) is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Count I of Plaintiff's complaint is DISMISSED as preempted by under § 301 of the Labor Management Relations Act.

---

[5] Even if this state-law claim were not preempted, this Court would decline to exercise supplemental jurisdiction over this claim, having dismissed all federal claims. *See Wallace v. Industrial Powder Coatings, Inc.*, 107 Fed.Appx. 547, 551 (6th Cir. 2004); *T.H. Eifert, Inc. v. United Association of Journeymen*, 422 F.Supp.2d 818, 840 n.3 (W.D. Mich. 2006).

IT IS SO ORDERED.

                                                    S/Sean F. Cox
                                                    Sean F. Cox
                                                    United States District Judge

Dated: July 29, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 29, 2010, by electronic and/or ordinary mail.

                                                  S/Jennifer Hernandez
                                                  Case Manager